1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  ANDREW PAULSON (CABN 267095)
   ZACHARY ABRAHAMSON (CABN 310951)
5  Assistant United States Attorneys

6     450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
7     Telephone: (415) 436-7356
      FAX: (415) 436-7234
8     Andrew.paulson@usdoj.gov
      Zachary.abrahamson2@usdoj.gov
9
   Attorneys for United States of America
10
                          UNITED STATES DISTRICT COURT
11
                        NORTHERN DISTRICT OF CALIFORNIA
12
                              SAN FRANCISCO DIVISION
13

14 | UNITED STATES OF AMERICA,           ) CASE NO. 3:22-mj-70036 MAG
                                         )
15 |        Plaintiff,                   ) UNITED STATES' MEMORANDUM OF POINTS
                                         ) AND AUTHORITIES IN SUPPORT OF PRETRIAL
16 |    v.                               ) DETENTION
                                         )
17 | VICENTE ARELLANO-BUENROSTRO, JR.,   ) Date:  January 26, 2022
     JUAN ARELLANO,                      ) Time:  12:00 p.m.
18 |                                     ) Court: Honorable Sallie Kim
            Defendants.                  )
19 |_____ )

20

21

22

23

24

25

26

27

28

MOTION FOR DETENTION
3:22-MJ-70036 MAG

## I. INTRODUCTION

For at least the past six months, Vicente Arellano-Buenrostro has led a multi-state firearms trafficking operation that funneled handguns, assault rifles, privately manufactured firearms (PMFs or so-called "ghost guns"), and machineguns into the Bay Area. For Arellano-Buenrostro, this was not simply a hobby. This was his fulltime job. Over the course of 17 transactions from June 2021 to January 2022, Arellano-Buenrostro and his brother, Juan Arellano, sold a veritable arsenal of weapons and approximately six pounds of methamphetamine to a federal agent acting in an undercover capacity (UC). All but one of these transactions was video recorded.[1] Moreover, for over seven months, Arellano-Buenrostro discussed the sale of firearms and illegal narcotics with the UC via text messages and telephone calls that were also recorded.

It is not just what Arellano-Buenrostro did, but how he did it: with a brazen contempt for the law and the safety of others. Evidence shows that Arellano-Buenrostro, himself a felon, sold numerous firearms to multiple other Bay Area felons. Additionally, during illicit firearms and drug transactions with the UC, Arellano-Buenrostro bragged about his drug connections and his ability to obtain fake IDs, social security cards, and passports. Perhaps most disturbingly, Arellano-Buenrostro brought a child to a transaction with the UC during which Arellano-Buenrostro sold two Glock pistols to the UC. During the transaction, the child sat in a car seat in the back of Arellano-Buenrostro's vehicle while he completed the deal.

Arellano-Buenrostro is a danger to the community and a flight risk. He should be detained.

## II. FACTS

### A. Arellano-Buenrostro Sells an Arsenal of Weapons and Approximately Five Pounds of Methamphetamine to an Undercover Agent over a Six-Month Period

Since at least March 2021, Arellano-Buenrostro has led a multi-state firearms trafficking operation that has resulted in a deluge of illegal firearms making their way into the hands of Bay Area felons, drug dealers, and criminals. The scheme was simple. Arellano-Buenrostro bought guns, ammunition, and accessories in Arizona and then transported them to the Bay Area where he would sell them for a profit.

---

[1] The September 8, 2021 transaction was not recorded because Arellano-Buenrostro believed he was being followed, so he changed the original meeting location with the UC. When Arellano-Buenrostro arrived at the new meeting location, he walked up to the UC's vehicle, tossed an AR-style rifle and a 100-round drum magazine inside the open window of the UC's car, and then walked away.

MOTION FOR DETENTION
3:22-MJ-70036 MAG                              1

For Arellano-Buenrostro, this appears to have been his job: Inquiries to the California and Arizona departments of labor returned no records of wage information for Arellano-Buenrostro. And his business was good: Based on bank records obtained in the course of this investigation, it appears that Arellano-Buenrostro made more than $100,000 between January 1, 2021 and November 15, 2021 from his illicit sales of firearms and methamphetamine.

Between June 2, 2021 and January 19, 2022,[2] Arellano-Buenrostro and his brother sold to the UC nine handguns, one AR-style short-barreled PMF rifle, two PMF machineguns, two AR-style assault rifles (one of which had an obliterated serial number), and one AK-style short-barreled assault rifle; hundreds of rounds of ammunition; numerous high-capacity drum magazines; and about six pounds of methamphetamine. All of these transactions (except for one on September 8, 2021) were recorded on video. The firearms, ammunition, and accessories that Arellano-Buenrostro and his brother sold to the UC are depicted below.[3]



The audaciousness with which Arellano-Buenrostro operated was striking. At the July 20, 2021 transaction with the UC, Arellano-Buenrostro sold a Glock 27, ammunition, and approximately one pound

---

[2] Further details of these transactions can be found in the complaint.

[3] The photograph below depicts all of the firearms purchased from Arellano-Buenrostro and Arellano through December 29, 2021. It does not depict the Sig Sauer P365, 9mm pistol and ammunition the UC purchased from Arellano-Buenrostro on January 19, 2022.

of methamphetamine to the UC in the same transaction. He then bragged to the UC about his drug connections, telling the UC that one of his connections deals "big weight" and gets "nothing but the best shit" (referring to the quality of the methamphetamine and other drugs Arellano-Buenrostro could get from his sources). Also in that transaction, Arellano-Buenrostro gloated that his connections make him fake IDs, social security cards, and passports. And on December 9, 2021, Arellano-Buenrostro's child sat in a car seat in the back of his vehicle while he sold two Glock pistols to the UC.

Arellano-Buenrostro did not care to whom he sold these deadly weapons, as long as they had the money to pay for them. For example, during a June 8, 2021 transaction with the UC where Arellano-Buenrostro sold the UC a Glock 17, 9mm pistol and ammunition, the UC told Arellano-Buenrostro that he could not register the weapon because he was a felon. Himself a felon,[4] Arellano-Buenrostro simply responded, "Yeah. I feel you." Arellano-Buenrostro's Facebook account, which he used to market and sell these deadly firearms, is also littered with discussions of firearms sales with multiple convicted felons. Moreover, during the July 20, 2021 transaction with the UC, Arellano-Buenrostro said that once he sells a gun to someone, he does not buy it back because he does not know what his customers do with the guns—a tacit admission that Arellano-Buenrostro is aware that his customers sometimes use the guns he sells in other criminal acts.

The firearms, ammunition, firearms accessories, and methamphetamine that Arellano-Buenrostro and his brother sold to the UC are summarized below. These firearms represent only a fraction of the guns that Arellano-Buenrostro advertised to the UC as being for sale over the course of more than seven months.

| Date | Evidence Purchased | Seller | Firearm Serial | Amount |
|---|---|---|---|---|
| 6/2/2021 | Kahr, .380 Caliber Pistol | Arellano-Buenrostro | RC6806 | $1,000 |
| 6/8/2021 | Glock 17, 9mm Pistol and Ammunition | Arellano-Buenrostro | KYM529 | $1,600 |

---

[4] Arellano-Buenrostro has two felony convictions, a 2021 felony conviction for second degree robbery in violation of California Penal Code § 212.5 and a 2014 felony conviction for possession of marijuana with intent to sell in violation of California Health and Safety Code § 11359.

MOTION FOR DETENTION
3:22-MJ-70036 MAG                       3

| Date | Evidence Purchased | Seller | Firearm Serial | Amount |
|---|---|---|---|---|
| 6/21/2021 | Glock 17, 9mm Pistol and Ammunition | Arellano | BTAR639 | $1,600 |
| 6/29/2021 | Two Glock 9mm Pistols and Ammunition | Arellano | (1) BPDH768, (2) BTUE104 | $3,100 |
| 7/17/2021 | AR-Style PMF and a 30-round Magazine | Arellano-Buenrostro | N/A | $3,300 |
| 7/20/2021 | Glock 27, Ammunition, and About a Pound of Methamphetamine | Arellano-Buenrostro | BNAN322 | $5,800 |
| 7/30/2021 | Approximately One Pound of Methamphetamine | Arellano-Buenrostro | N/A | $2,800 |
| 8/16/2021 | Approximately One Pound of Methamphetamine | Arellano | N/A | $2,800 |
| 9/8/2021 | AR-Style Rifle and 100-Round Drum | Arellano-Buenrostro | SCD047790 | $2,700 |
| 9/8/2021 | Approximately One Pound of Methamphetamine | Arellano-Buenrostro | N/A | $2,950 |
| 9/22/2021 | Approximately One Pound of Methamphetamine | Arellano-Buenrostro | N/A | $3,000 |
| 10/6/2021 | Two AR-Style PMF Machine Guns and Two 30-Round Magazines | Arellano-Buenrostro | N/A | $6,000 |
| 10/20/2021 | Two 50-Round Drum Magazines | Arellano-Buenrostro | N/A | $300 |

MOTION FOR DETENTION
3:22-MJ-70036 MAG                                    4

| Date | Evidence Purchased | Seller | Firearm Serial | Amount |
|---|---|---|---|---|
| 12/2/2021 | Approximately One Pound of Methamphetamine | Arellano-Buenrostro | N/A | $3,000 |
| 12/9/2021 | Two Glock 17, 9mm Pistols | Arellano-Buenrostro | (1) NUS573, (2) DTY854 | $3,000 |
| 12/29/2021 | Two Rifles, Three High-Capacity Magazines, and Ammunition | Arellano-Buenrostro | (1) RONVMB71816530, (2) Obliterated Serial | $5,000 |
| 1/19/2022 | Sig Sauer P365, 9mm Pistol and Ammunition | Arellano-Buenrostro | 66A689654 | $1,500 |

## III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, as amended, the Court must detain a defendant pretrial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary for the government to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C.

§ 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).  Moreover, in cases such as this where a judicial officer finds probable cause to believe that a defendant committed an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."

IV.    **ARGUMENT**

   A.    **The nature and circumstances of the offenses charged show that Arellano-Buenrostro poses a danger to the community.**

The offense conduct here is extremely serious.  Arellano-Buenrostro was the leader and organizer of a multi-state firearms trafficking organization that brought at least 15 firearms—including two machineguns—to the Bay Area in just seven months.  He and his co-conspirator used Facebook to market, negotiate, and coordinate the sale of countless deadly weapons to customers, a number of whom are convicted felons.  Moreover, many of the firearms he sold were untraceable "ghost guns" or had their serial numbers obliterated, thereby thwarting the critical government interest in tracing firearms.  *See* Barack H. Obama, Presidential Memorandum for the Heads of Executive Departments and Agencies (Jan. 16, 2013) (outlining principal benefits of firearms tracing); *see also United States v. McSwain*, No. 19-80 (CKK), 2019 WL 1598033, at *3-4 (D.D.C. April 15, 2019) (finding that where defendant was arrested in possession of loaded "ghost" gun during a traffic stop, "the nature and circumstances of the offenses charged, as well as the weight of the evidence against [defendant] strongly suggest that no other conditions short of pretrial detention would reasonably assure community safety").  Even Arellano-Buenrostro's sale of serialized firearms was designed to avoid tracing.  In the very first deal with the UC on June 2, 2021, Arellano-Buenrostro sold the UC a Kahr, .380 caliber pistol.  He instructed the UC to "just say that you bought it at a state fair from a guy" in Arizona.  Arellano-Buenrostro's illicit firearms trafficking represents an end-run around tracing, and, as a result, this trafficking activity will continue to undermine the effectiveness of efforts to combat violent crime into the future.

Not only were many of the weapons Arellano-Buenrostro sold untraceable, but a number of them were altered to increase their lethality.  On October 6, 2021, for example, Arellano-Buenrostro sold the UC two

AR-style assault weapons that had been modified to operate as machineguns.[5] Moreover, Arellano-Buenrostro told the UC on multiple occasions that he could get "switches"—a device that enables a gun to fire in either semi-automatic or automatic machinegun mode. In other words, once enabled, a switch allows a shooter to depress the trigger and shoot automatically more than one shot, without manual reload, by a single function of the trigger. Arellano-Buenrostro peddled these weapons of enhanced lethality amidst a dramatic increase in gun violence in the Bay Area and nationwide.[6] Indeed, multiple individuals sent Arellano-Buenrostro links to news articles regarding specific murders that occurred in the Bay Area. After one of them, Arellano-Buenrostro replied that he had already seen the article, and added "LOL" (laugh out loud).

The fact that Arellano-Buenrostro worked with others to traffic firearms also shows that detention is necessary. Evidence obtained in this investigation shows that Arellano-Buenrostro used his phone to coordinate with coconspirators, including with respect to firearms purchases and sales. That activity could continue unchecked if the Court confines Arellano-Buenrostro to his home or a halfway house.

Finally, Arellano-Buenrostro poses a danger to the community because he trafficked methamphetamine and did so armed. As the Ninth Circuit has recognized, "The danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute." *United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir. 2004); *see also United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (internal quotation marks omitted). Here, Arellano-Buenrostro organized and managed the distribution of approximately six *pounds* of methamphetamine. And on multiple occasions, Arellano-Buenrostro told the UC that he was armed with a personal firearm that was easy to conceal. In fact, during the January 19, 2022 transaction during which Arellano-Buenrostro sold the UC a Sig Sauer 9mm pistol, Arellano-Buenrostro showed the UC the Glock 27 handgun that Arellano-Buenrostro indicated he carried with him. All these circumstances show that Arellano-Buenrostro poses a danger to the community absent pretrial

---

[5] A machinegun is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b).

[6] *See, e.g.*, "Gun Violence in Oakland has become a 'pandemic within the pandemic.' Here's what's going on," San Francisco Chronicle, December 3, 2021. https://www.sfchronicle.com/crime/article/Gun-violence-in-Oakland-has-become-a-pandemic-16670919.php (last accessed Jan. 24, 2022).

MOTION FOR DETENTION
3:22-MJ-70036 MAG                 7

detention.

**B.     The weight of the evidence is overwhelming.**

In this case, Arellano-Buenrostro and his brother engaged in a total of 17 transactions, 16 of which were video-recorded.  Moreover, Arellano-Buenrostro communicated with the UC about the sale of guns and drugs for over seven months in recorded text messages and telephone calls.  Though case law deems the strength of the evidence the least important—and in this case it is overwhelming—the Court still must consider it as a factor contributing to an individual's dangerousness.  *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released).  Likewise, overwhelming evidence of Arellano-Buenrostro's guilt "makes it more likely that he will flee," since he has less incentive to appear and answer for his criminal conduct.  *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991).  That's particularly true here, where Arellano-Buenrostro faces a potential mandatory minimum sentence of ten years if indicted under 21 U.S.C. § 841(a)(1), (b)(1)(A).  So the weight of the evidence favors detention.

**C.     Arellano-Buenrostro's history and characteristics demonstrate the danger and risk of non-appearance he poses.**

Aside from the dangerousness inherent in leading a multi-state firearms trafficking operation that funneled some of the most dangerous weapons available to criminals in the Bay Area, Arellano-Buenrostro's history and characteristics also show that he is a danger to the community and a flight risk.  The manner in which Arellano-Buenrostro conducted his business was particularly aggravating.  For starters, Arellano-Buenrostro not only engaged in illicit sales of firearms, but also illicit sales of methamphetamine, and sometimes in the same transaction.  *See Daychild*, 357 F.3d at 1100 (recognizing that armed conspirators trafficking in illegal drugs presented a danger that was "too plain to permit dispute").

Second, Arellano-Buenrostro is himself a felon, which means that his mere possession of these weapons was itself a felony.  But that did not stop him.  Quite the opposite: Arellano-Buenrostro used it as a way to identify with his customers.

Third, Arellano-Buenrostro bragged to the UC that he knew an individual who had in the past made him fake IDs, social security cards, and passports.  Indeed, when agents arrested Arellano-Buenrostro,

MOTION FOR DETENTION
3:22-MJ-70036 MAG                                                8

they found a counterfeited Arizona driver's license with Arellano-Buenrostro's picture but someone else's name and identifying information in his room. He therefore has not only the incentive to flee, but the means to conceal his identity.

## V. CONCLUSION

There are no set of conditions that will reasonably assure the appearance of the Vicente Arellano-Buenrostro at court proceedings or ensure the safety of the community. Consequently, Arellano-Buenrostro should be detained pretrial.

DATED: January 25, 2021

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Zack Abrahamson*
ANDREW PAULSON
ZACHARY ABRAHAMSON
Assistant United States Attorneys

3:22-MJ-70036 MAG                           9